IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JETTO DORSAINVILLE,

    Plaintiff,

  v.                                                                                 1:16-cv-00693-LF

NANCY A. BERRYHILL[1], Acting Commissioner
of the Social Security Administration,

    Defendant.

## MEMORANDUM ORDER AND OPINION

THIS MATTER comes before the Court on plaintiff Jetto Dorsainville's Motion to Reverse and Remand for a Rehearing (Doc. 18), which was fully briefed on May 31, 2017. Docs. 22, 23, 24. The parties consented to my entering final judgment in this case. Docs. 4, 6, 7. Having meticulously reviewed the entire record and being fully advised in the premises, the Court finds that the Administrative Law Judge ("ALJ") failed to apply the correct legal standards in weighing the opinion of non-examining state agency psychiatric consultant Dr. Scott Walker. The Court therefore GRANTS Mr. Dorsainville's motion and remands this case to the Commissioner for proceedings consistent with this opinion.

    **I.**        **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[2] is supported by substantial evidence and whether the correct legal standards were

---

[1] Nancy A. Berryhill, the new Acting Commissioner of Social Security, is automatically substituted for her predecessor, Acting Commissioner Carolyn W. Colvin, as the defendant in this suit. FED. R. CIV. P. 25(d).

[2] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 404.981, as it is in this case.

applied. *Maes v. Astrue,* 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart,* 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue,* 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley,* 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart,* 399 F.3d 1257, 1262 (10th Cir. 2005). "'The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence.'" *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

II. **Applicable Law and Sequential Evaluation Process**

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

2

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity;" (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

### III. Background and Procedural History

Mr. Dorsainville, currently age 35, graduated high school, and served in the United States Air Force for fifteen years. AR 151, 195.[4] Mr. Dorsainville filed an application for disability insurance benefits on September 18, 2014—alleging disability since August 11, 2014 due to degenerative arthritis, chest and neck pain, asthma/bronchitis, left hip sprain, chronic abdominal pain, post-traumatic stress disorder ("PTSD"), headaches, hypertension, sleep apnea, and

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] Document 13-1 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

3

gastroesophageal reflux disease ("GERD"). AR 151–57, 194. The Social Security Administration ("SSA") denied his claim initially on January 6, 2015. AR 94–97. The SSA denied his claims on reconsideration on April 8, 2015. AR 99–101. Mr. Dorsainville requested a hearing before an ALJ. AR 102–03. On November 4, 2015, ALJ Myriam C. Fernandez Rice held a hearing. AR 37–66. ALJ Fernandez Rice issued her unfavorable decision on December 1, 2015. AR 17–36.

The ALJ found that Mr. Dorsainville was insured for disability benefits through March 31, 2019. AR 22. At step one, the ALJ found that Mr. Bennett had not engaged in substantial, gainful activity since August 11, 2014. *Id*. Because Mr. Dorsainville had not engaged in substantial gainful activity for at least twelve months, the ALJ proceeded to step two. *Id.* At step two, the ALJ found that Mr. Dorsainville had the following severe impairments: "asthma; sleep apnea; mild degenerative lumbar disc disease; hypertension; post-traumatic stress disorder (PTSD); and alcohol abuse addiction disorder." *Id.* At step three, the ALJ found that none of Mr. Dorsainville's impairments, alone or in combination, met or medically equaled a Listing. AR 22–24. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Mr. Dorsainville's RFC. AR 24–30. The ALJ found that:

> [T]he claimant has the residual functional capacity to perform a limited range of light work as defined in 20 CFR 404.1567(b) as follows:
> - The claimant is able to lift and/or carry up to 20 pounds occasionally and 10 pounds frequently;
> - The claimant is able to stand and/or walk and sit for up to six hours in an eight-hour workday with normal breaks;
> - The claimant should avoid even moderate exposure to environmental irritants, such as fumes, odors, dusts, gases, chemicals, and poorly ventilated areas; and
> - The claimant should have only occasional interaction with the public and co-workers.

AR 24.

At step four, the ALJ concluded that Mr. Dorsainville was unable to perform his past relevant work as a program manager. AR 30. The ALJ found Mr. Dorsainville was not disabled at step five, concluding that he still could perform jobs that exist in significant numbers in the national economy—such as administrative clerk and general clerk. AR 31.

Mr. Dorsainville requested review by the Appeals Council, and submitted additional evidence. AR 5, 14–15. The Appeals Council made the additional evidence part of the record, but, on April 23, 2016, denied the request for review. AR 1–5. Mr. Dorsainville timely filed his appeal to this Court on June 24, 2016.[5] Doc. 1.

## IV. Mr. Dorsainville's Claims

Ms. Dorsainville raises two arguments for reversing and remanding this case: (1) the ALJ impermissibly picked and chose from the limitations noted in the opinion of non-examining state agency consultant Dr. Scott Walker, and (2) the Appeals Council failed to analyze the opinion of treating psychologist Dr. James Gillies, which undercuts the ALJ's RFC findings. Because the Court remands based on the ALJ's failure to properly analyze the opinion of Dr. Walker, the Court does not address the other alleged error, which "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V. The ALJ Erred in Failing to Either Incorporate, or Explain Why She Rejected, a Moderate Limitation Noted in the Medical Opinion of Dr. Scott Walker.

Although an ALJ need not discuss every piece of evidence, the ALJ must discuss the weight assigned to each medical source opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii)). Specifically, when assessing a plaintiff's RFC, an ALJ must explain what weight is assigned to each opinion and

---

[5] A claimant has 60 days to file an appeal. The 60 days begins running five days after the decision is mailed. 20 C.F.R. 404.981; *see also* AR 2.

why. SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996).[6] "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7. "[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on [a specific] functional capacity" because "the ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (alteration and internal quotation marks omitted)); *see also Wells v. Colvin*, 727 F.3d 1061, 1071 (10th Cir. 2013) ("exact correspondence between a medical opinion and the mental RFC is not required"). Nevertheless, "[a]n ALJ is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." *Chapo*, 682 F.3d at 1292 (quoting *Haga v. Astrue*, 482 F.3d 1205, 1208 (10th Cir. 2007)). An ALJ "must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Ultimately, an ALJ is required to weigh medical source opinions and to provide "appropriate explanations for accepting or rejecting such opinions." SSR 96-5p, 1996 WL 374183, at *5; *see also Keyes-Zachary*, 695 F.3d at 1161 ("It is the ALJ's duty to give consideration to all the medical opinions in the record," and to "discuss the weight he [or she] assigns to such opinions." (citing 20 C.F.R. §§ 404.1527(c), (e)(2)(ii), 416.927(c), (e)(2)(ii)).

In 2007, the Tenth Circuit Court of Appeals decided two cases that control here. First, in *Haga*, the court held that an ALJ erred in failing to explain why he adopted some of a consultative examiner's ("CE") restrictions but rejected others. 482 F.3d at 1208. "[T]he ALJ did not state that any evidence conflicted with [the CE's] opinion or mental RFC assessment. So

---

[6] Rescinded by Federal Register Notice Vol. 82, No. 57, page 15263, effective March 27, 2017.

it is simply unexplained why the ALJ adopted some of [the CE's] restrictions but not others." *Id.* The court remanded the case "so that the ALJ [could] explain the evidentiary support for his RFC determination." *Id.* Later in 2007, in *Frantz v. Astrue*, 509 F.3d 1299, 1302−03 (10th Cir. 2007), the Tenth Circuit expressly applied *Haga* and its reasoning to the opinions of non-examining physicians.

Mr. Dorsainville argues that the ALJ failed to account for the moderate limitation in his ability "to accept instructions and respond appropriately to criticism from supervisors" noted in Dr. Walker's Mental Residual Functional Capacity Assessment ("MRFCA"). Doc. 18 at 11. He argues that, by adopting some of the moderate limitations in Dr. Walker's opinion, while rejecting others without explanation, the ALJ "pick[ed] and chose" limitations in violation of *Haga*. *Id.* The Commissioner responds that the ALJ adequately considered Dr. Walker's Section III findings, and was not required to discuss Dr. Walker's Section I findings. Doc. 22 at 7–8 (citing *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished) and POMS DI 25020.010 B.1.). The Court finds the Commissioner's arguments unpersuasive, and agrees with Mr. Dorsainville that the ALJ was required to either include, or to explain her reasons for rejecting, the moderate limitations noted in Section I of Dr. Walker's opinion.

An ALJ is required to consider and discuss both Section I and Section III findings. As the Honorable Stephan M. Vidmar thoroughly explained in his opinion rejecting arguments that an ALJ is not required to consider Section I findings, the Program Operations Manual System ("POMS"),[7] regulations, and case law require the ALJ to address all of Dr. Walker's findings, not just those in Section III. *See Silva v. Colvin*, No. 15-cv-603 SMV, Doc. 24 at 11–18

---

[7] The POMS is "a set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). The Court "defer[s] to the POMS provisions unless [it] determine[s] they are 'arbitrary, capricious, or contrary to law.'" *Ramey v. Reinertson*, 268 F.3d 955, 964 n.2 (10th Cir. 2001) (quoting *McNamar*, 172 F.3d at 766).

(D.N.M., Aug. 25, 2016). In addition, the ALJ did not merely rely on the Section III findings in this case. The ALJ included Dr. Walker's Section I finding of a moderate limitation in ability to interact with the public in the RFC. This limitation does not appear at all in Dr. Walker's Section III narrative. If the ALJ merely relied on Section III, as the Commissioner argues, she would not have included the Section I limitation about dealing with the general public in the RFC. Under *Haga*, 482 F.3d at 1208, and *Frantz*, 509 F.3d at 1302–03, the ALJ has a duty to explain why she adopted some of Dr. Walker's limitations while rejecting others. The Court must determine whether the ALJ adequately accounted for the limitations noted by Dr. Walker in the RFC assessment. *See Carver*, 600 F. App'x at 619. If not, the Court must determine whether the ALJ adequately explained why she rejected the missing limitations.

In Section I of his January 5, 2015 MRFCA, Dr. Walker found that Ms. Bennett had the following social interaction limitations:

- Moderate limitation in the ability to interact appropriately with the general public;
- Moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors;
- Moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

AR 76.[8]

In Section III of his MRFCA, Dr. Walker found that:

The clmt can understand, remember, and carry out complex instructions, use judgement to make decisions, attend and concentrate for two hours at a time, may have moderate limitations in interacting appropriately with co-workers and supervisors, and respond [sic] appropriately to changes in a work setting.

AR 77.

In discussing Dr. Walker's opinion, the ALJ only listed his Section III findings. AR 27. The ALJ gave "great weight" to Dr. Walker's opinion, because it was "consistent with the record as a whole, including the objective clinical findings, the claimant's inconsistent mental health

---

[8] Dr. Thomas VanHoose found identical moderate limitations on reconsideration. AR 88.

8

treatment, his own statements, and his daily activities." *Id.* However, the ALJ's RFC accounts for only two of the moderate social interaction limitations noted in Dr. Walker's opinion: (1) the moderate limitation in his ability to interact appropriately with the **public** is accounted for by the RFC finding that he should have only "occasional interaction with the public;" and (2) the moderate limitation in his ability to get along with **coworkers** is accounted for by the RFC finding that he should have only "occasional interaction with . . . coworkers." AR 24. However, the ALJ's RFC fails to account for the moderate limitation in his ability to interact with supervisors. The ALJ's opinion offers no explanation for why she rejected this limitation. Remand is therefore required.

The Commissioner attempts to explain the ALJ's failure to include the moderate limitation regarding supervisors from Section I of the MRFCA by arguing that Dr. Walker was "equivocal in [his] narrative explanations pertaining to social interaction." Doc. 22 at 8. The Commissioner seems to argue that the ALJ intentionally omitted the limitation because of the equivocal Section III language. A closer look at the ALJ's opinion does not support this hypothesis. In Section I, Dr. Walker found that Mr. Dorsainville had a "moderate limitation" in his ability "to accept instructions and respond appropriately to criticism from supervisors." AR 76. In Section III, Dr. Walker found that Mr. Dorsainville "**may** have moderate limitations interacting appropriately with co-workers and supervisors." AR 77 (emphasis added). The ALJ included the moderate limitation in ability to get along with coworkers in the RFC. This limitation, like the moderate limitation in ability to interact with supervisors, is prefaced by the word "may" in the Section III narrative. If the ALJ rejected the social interaction limitations due to the "equivocal" Section III findings, as the Commissioner argues, she would not have included the limitation in interacting with co-workers in the RFC. Given these facts, the Court

agrees that the ALJ impermissibly picked and chose from the limitations in Dr. Walker's opinion.

The Commissioner argues that the ALJ adequately considered Mr. Dorsainville's ability to interact with supervisors. The Commissioner points out that the ALJ noted that Mr. Dorsainville "testified that he had conflicts with others and did not take orders on the job, but in his December 2014 'function report,' he acknowledged that he got along 'ok' with authority figures." Doc. 22 at 8. The conclusion the Commissioner draws from this—that "the ALJ adequately accounted for Plaintiff's work-related social limitations by limiting him to occasional interaction with the public and coworkers"—however, is a non-sequitur. The ALJ quoted Mr. Dorsainville's function report, in which he admitted he gets along "ok" with authority figures in her Step 2 discussion of Mr. Dorsainville's social functioning.[9] AR 23. The ALJ quoted Mr. Dorsainville's hearing testimony, in which he said he had conflicts with others and did not take orders on the job, in her RFC findings. AR 25. The ALJ made no attempt to reconcile these conflicting statements. In fact, the ALJ offered no explanation of what limitation, if any, she found in his ability to interact with supervisors. It's not enough for the Commissioner to "suppl[y] some reasons that it believes would support the ALJ's RFC finding" if the "ALJ did not provide these explanations." *Haga*, 482 F.3d at 1207–08. "[T]his court may not create or

---

[9] In addition, the Court notes that the record shows Mr. Dorsainville had poor insight into his psychological problems. AR 552, 604; AR 597 ("I don't think I have a problem with anger, but other people do."); AR 602 ("Wife says he has anger problem, he doesn't think so."); AR 314 (noting he has "difficulty in establishing and maintaining effective work and social relationships"); AR 54–55 (testified that that others tell him he has "an attitude issue," "random mood issues," and that while he feels like he is taking orders, others tell him he is not); AR 46 (fired for having a temper outburst at work). The Court also notes that the opinion from his treating psychologist Dr. James Gillies indicates that Mr. Dorsainville has at least a moderate limitation in his ability to interact with supervisors. AR 1005. While the ALJ did not have the benefit of this opinion when rendering her decision, it is now part of the record before the Court.

adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Id.* (citations omitted).

The ALJ failed to either adopt or explain her reasons for rejecting a moderate limitation. A claimant's ability to interact with supervisors is a work-related mental ability that is critical to all work, and the ALJ must adequately address it in the RFC.[10] *See* POMS 25020.010(B)(2)(c). Because the ALJ failed to explain why she rejected this limitation, remand is required. *Haga*, 482 F.3d at 1208.

---

[10] "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945." SSR 96-8p, 1996 WL 374184, at *1. This means the ALJ must consider how the claimant's impairments affect his or her physical abilities, mental abilities, and other abilities. An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis. A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting."). In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record. SSR 96-8p, 1996 WL 374184, at *2. The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'" *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

## VI. Conclusion

The ALJ erred in failing to incorporate or explain why she rejected the moderate limitation in Mr. Dorsainville's ability to interact with supervisors. The Court remands so that the ALJ can explain the evidentiary basis for her RFC determination.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing (Doc. 18) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent